## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| HELEN KWASNIEWSKI, <br> On behalf of plaintiff and a class, <br> <br> Plaintiff, <br> <br> vs. <br> <br> MEDICREDIT, INC., <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No.  3:19-CV-00701-WMC <br> ) <br> ) <br> ) <br> ) |

### DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS FOR LACK OF STANDING

Defendant Medicredit, Inc. ("Medicredit"), hereby moves the Court to enter judgment in its favor pursuant to Fed.R.Civ.P. 56, or in the alternative to dismiss the Complaint for lack of standing. And for support states as follows:

### INTRODUCTION

26 U.S.C. § 501(r) ("501(r)") imposes specific notice requirements on tax-exempt hospitals collecting debt. Medicredit is a debt collector that collects medical debt on behalf of medical facilities across the country. Statement of Proposed Findings of Fact in Support of Motion for Summary Judgment ("SOF"), at ¶3. In some instances, Medicredit collects debt on behalf of tax-exempt hospitals. SOF, at ¶11 & 14. St. Mary's Hospital – Janesville ("St. Mary's") is a tax-exempt hospital subject to the requirements of 501(r). SOF, at ¶14. When Medicredit attempts to collect debt on behalf of St. Mary's, it must also comply with certain requirements of 501(r) with respect to collection activities related to those accounts. SOF, at ¶15.

1

501(r) and its corresponding regulations set forth a specific list of "Extraordinary Collection Activities" ("ECAs") that tax-exempt hospitals (or third parties collecting on their behalf) can undertake.  Those ECAs include, but are not limited to:

> (i) Selling an individual's debt to another party (other than debt sales described in paragraph (b)(2) of this section).
> (ii) Reporting adverse information about the individual to consumer credit reporting agencies or credit bureaus.
> (iii) Deferring or denying, or requiring a payment before providing, medically necessary care because of an individual's nonpayment of one or more bills for previously provided care covered under the hospital facility's FAP (which is considered an ECA to obtain payment for the previously provided care, not the care being potentially deferred or denied).…
> (iv) Actions that require a legal or judicial process, including but not limited to—
> > (A) Placing a lien on an individual's property…;
> > (B) Foreclosing on an individual's real property;
> > (C) Attaching or seizing an individual's bank account or any other personal property;
> > (D) Commencing a civil action against an individual;
> > (E) Causing an individual's arrest;
> > (F) Causing an individual to be subject to a writ of body attachment; and
> > (G) Garnishing an individual's wages.

26 C.F.R. § 1.501(r)-4(b)(1).

Before a tax-exempt hospital can undertake any ECAs, it must give the consumer notice of the specific opportunities for financial assistance provided by Section 501(r) and must notify consumers of the specific ECAs that may result from nonpayment.  26 U.S.C. § 501(r)(4)(A) and 501(r)(6).

Plaintiff Helen Kwasniewski ("Plaintiff") received medical treatment at St. Mary's in 2018. SOF, at ¶10.  Plaintiff did not pay the debt associated with that treatment.  SOF, at ¶11.  That debt was placed with Medicredit for collection (the "Debt").  SOF, at ¶12. In order to comply with 501(r), Medicredit obtained information from St. Mary's regarding what ECAs may occur if a

debtor refused to pay their debt.  SOF, at ¶19 & 20.  St. Mary's reported to Medicredit that it would only consider taking the following actions against consumers who received treatment at St. Mary's and whose accounts were in default: reporting to a consumer credit reporting agency or credit bureaus; commence a civil action (suit) which may include garnishment of wages, attaching or seizing a bank account, and/or placing a lien on residences or other personal property.  SOF, at ¶20.  Pursuant to its obligations under 501(r), Medicredit relayed this information to Plaintiff in the form of a single collection letter. SOF, at ¶40.  Medicredit stated that if the Debt remained unpaid, then St. Mary's "<u>may begin</u>" the ECAs identified in the letter.  *Id.*  Plaintiff has now sued Medicredit, individually and on behalf of a putative class, alleging that Medicredit threatened ECAs that St. Mary's did not intend to take.  Complaint, at ¶32. Plaintiff's Complaint does not allege that she has suffered any actual damages as a result of receiving the collection letter. Complaint.

    As described in more detail below, Medicredit communicated that St. Mary's may undertake the ECAs that were specifically identified by St. Mary's, in compliance with 501(r). Plaintiff therefore cannot establish a violation of the Fair Debt Collection Practices Act (the "FDCPA") with respect to the letter.  Even if the Court were to find that Medicredit committed a technical violation of the FDCPA, any such violation was unintentional and occurred despite the maintenance of procedures designed to prevent a violation.  Therefore, Medicredit is not liable to Plaintiff based on the application of the bona fide error defense.

    Finally, to the extent that the Court were to find that Medicredit is liable, because Plaintiff has not pled that she has been damaged by the alleged violation other than seeking an entitlement to statutory damages, Plaintiff lacks Article III standing to assert her claims.  This Court, therefore,

should grant Medicredit's Motion for Summary Judgment or, in the Alternative, Motion to Dismiss for Lack of Standing.

## APPLICABLE LEGAL STANDARDS

### *Summary Judgment Standard*

Summary judgment is not a disfavored procedural shortcut, rather, it is an important procedure designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment should be rendered if "particular parts of materials in the record, including depositions, documents, . . . affidavits . . . , admissions, interrogatories, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c). If the movant does not bear the ultimate burden of persuasion at trial, it must only illustrate that the other party cannot "make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 322-23.

The movant bears the initial burden of showing the lack of any genuine issue of material fact and its entitlement to judgment as a matter of law. *Id.* at 325. The burden then shifts to the non-moving party to show the existence of a disputed issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### *Section 501(r)*

Under 26 U.S.C. § 501(c)(3) and (e), certain hospital organizations are exempt from taxation subject to the requirements set out in 26 U.S.C. § 501(r) ("501(r)"). 501(r) prohibits a tax-exempt hospital from engaging in ECAs before making reasonable efforts to determine whether the individual who owes the debt is eligible for financial assistance as required by 26 U.S.C. § 501(r)(4)(A) and before giving the consumer notice of the potential for ECAs. 26 U.S.C §

4

501(r)(6). ECAs include, among other things, reporting to a consumer credit reporting agency or credit bureaus; commence a civil action (suit) which may include garnishment of wages, attaching or seizing a bank account, and placing a lien on residences or other personal property. 26 C.F.R. § 1.501(r)-4(b)(1).

*The Fair Debt Collection Practices Act*

Plaintiff claims that Medicredit violated the following provisions of the FDCPA: 15 U.S.C. § 1692e, § 1692e(2), § 1692e(4), § 1692e(5), and § 1692e(10). Complaint, at ¶32. In order to establish a violation under the FDCPA, Plaintiff must establish that a debt collector engaged in an act prohibited by the FDCPA in the course of attempting to collect a debt. 15 U.S.C. 1692 *et seq.* The parties do not dispute that Medicredit is a debt collector that was attempting to collect a debt from Plaintiff. The dispute lies with whether or not Medicredit violated any section of the FDCPA with respect to sending the single collection letter to Plaintiff listing the ECAs St. Mary's "may begin" if the debt remained unpaid.

Plaintiff alleges that Medicredit violated the FDCPA by "threatening" ECAs that St. Mary's had no intention of taking.[1] Complaint, at ¶s 23 and 24. Plaintiff alleges that this threat violated the following provisions of the FDCPA:

- § 1692e - "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

- § 1692e(2) – A debt collector may not falsely represent "the character, amount, or legal status of any debt".

---

[1] Plaintiff conveniently ignores the fact that the letter states that St. Mary's "may begin" certain ECAs. Such language does not constitute a "threat" as a matter of law for the reasons set forth below.

5

- § 1692e(4) – A debt collector may not represent or imply "that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

- § 1692e(5) – A debt collector may not threaten "to take any action that cannot legally be taken or that is not intended to be taken."

- § 1692e(10) – A debt collector may not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

In order to meet her burden to establish a violation of any of these sections, Plaintiff must prove that Medicredit threatened actions which Medicredit did not believe St. Mary's would take.

### *The Bona Fide Error Defense*

In the event that a debt collector's actions constitute a technical violation of the FDCPA, the debt collector will not be ultimately liable "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k. This is commonly referred to as the "bona fide error defense." To qualify for the bona fide error defense, a debt collector "must make three showings under § 1692k(c): (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

With respect to the first element, a debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional. *Id.* (citing *Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir.2002) (debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate")). Courts have routinely found that debt collectors engaged in unintentional violations when they use forms containing language approved by a third party. *Id.*

To establish the second element, a debt collector must show that the error was "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Id.* A debt collector can rely on information provided by the original creditor as evidence of the unintentional nature of its mistake. *See Abdollahzadeh v. Mandarich Law Grp., LLP*, 922 F.3d 810, 816 (7th Cir. 2019) (citing *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991 (7th Cir. 2003) as explaining that "an agreement between a collector and its creditor-clients that debts are current would be a reasonable preventative measure for a debt collector to take" although it would not be required in order to invoke the bona fide error defense.); *White v. First Step Group, LLC*, 2017 WL 4181121, at *8 (E.D. Cal., September 19, 2017). That is, the FDCPA does not "require an independent investigation of the debt referred for collection." *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004)(debt collectors have no duty to independently verify "information that may be in creditors' files -- for example, that debt has been paid or was bogus to start with").

The final element of the bona fide error defense requires a debt collector to "have procedures in place, and the procedures must be reasonably adapted to avoid the error in question." *Abdollahzadeh*, 922 F.3d at 817. The Supreme Court has described "procedures" in this context as "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." *Jerman*

SL 3719489.1
SL 3751610.1

*v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010). "On the other hand, a thinly specified policy, allegedly barring some action but saying nothing about what action to take, doesn't qualify." *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 (7th Cir. 2015). There is no requirement under either the FDCPA or case law that a policy be in writing. *See Abdollahzadeh*, 922 F.3d at 817-818 (finding that the bona fide error defense insulated the debt collector from liability because it had reasonable policies, although none of them were in writing).

### *Spokeo* Standing

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). The Supreme Court recently held in *Spokeo* that, to establish the first element of Article III standing, a "'concrete' injury must be 'defacto'; that is, it must actually exist." *Id.* at 1548. While a violation of a procedural, statutory right may be sufficient "in some circumstances to constitute injury in fact", the alleged statutory violation must create the "risk of real harm." *Id.*

This issue was fully vetted in the Seventh Circuit Court of Appeals' recent decision in *Casillas v. Madison Ave. Assocs., Inc.* 926 F.3d 329, 332 (7th Cir. 2019). In that case, the plaintiff asserted that the debt collector violated the FDCPA in the context of sending a collection letter. *Id.* The Seventh Circuit agreed. However, in holding that plaintiff lacked standing, the court poignantly opened its opinion stating: "The bottom line of our opinion can be succinctly stated: no harm, no foul." *Id.* at 329. That is, the court held that "[a]rticle III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* While a plaintiff may be able to establish a violation of the FDCPA, the plaintiff lacks standing unless he or she can show "that the violation harmed or

presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Id.* at 333; *See also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017). Therefore, unless a plaintiff can plead and prove a concrete injury in fact, they lack standing to sue in federal court.

## ARGUMENT

### 1. Medicredit did not violate the FDCPA.

In order to meet her burden to establish a violation of the FDCPA, Plaintiff must prove that Medicredit threatened action Medicredit did not believe St. Mary's intended to undertake. Plaintiff cannot meet this burden for a number of reasons.

As a threshold matter, the Second Letter did not "threaten" any action at all. The Second Letter[2] stated as follows:

> St. Marys Hospital - Janesville provides Financial Assistance for eligible individuals. The Financial Assistance Policy and Financial Assistance Application are available upon request at the hospital facility, or by visiting ssmhealth.com/financialaid or by calling 1-855-989-6789. **If this debt remains unpaid, then 30 days from the date of this letter the Facility may begin the following Extraordinary Collection Actions (ECAs):**
> - Reporting to a consumer credit reporting agency or credit bureaus (Credit Agencies)
> - Commence a civil action (suit) which may include:
>   - Garnishment of wages
>   - Attaching or seizing a bank account
>   - Placing a lien on residences or other personal property

SOF, at ¶40. In bold print is the express statement that "**If this debt remains unpaid, then 30 days from the date of this letter the Facility *may begin* the following Extraordinary Collection Actions (ECAs)**". *Id.* (emphasis added). The operative word in that sentence is "may". The Second Letter did not state that any of the ECAs would occur. Just that they "may". *Id.*

While there are no cases directly addressing the standard applicable to whether or not ECAs constitute a "threat", general case law examining "threats" of litigation are instructive. In determining whether a statement constitutes an actual "threat" of legal action, a court should

---

[2] All defined terms have the same meaning as those used in the SOF.

9

consider: "(1) whether the threat to bring suit to collect the debt is one made by the debt collector himself, or whether the language merely suggests that the debt collector's client may consider pursuing legal action in the event of nonpayment; (2) whether the language in the letters explicitly threatens that legal action will be taken, or whether it simply describes available alternatives which include possible legal action;" and (3) the defendant's ability and intent to carry out the threatened conduct." *Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 348 (E.D.N.Y. 2009).  In *Madonna v. Acad. Collection Serv., Inc.*, 1997 WL 530101, at *7 (D. Conn. Aug. 12, 1997), the court considered whether the language "if you can not (sic) remit the balance, contact us as soon as possible" and that "[f]ailure to comply may result in our informing our client that you have refused to cooperate, they may choose to pursue legal action" violated section 1692e of the FDCPA.  The court expressly held: "Far from threatening legal action, the statement that the creditor "may choose to pursue legal action," indicates that legal action is an option available to the creditor, who may indeed choose to take advantage of it." *Id.*  The court therefore found that the letter did not threaten any legal action at all. *Id.*

The court in *Riveria v. MAB Collection, Inc.*, 682 F.Supp. 174, 178 (W.D. N.Y. 1988) came to the same conclusion.  (holding that the statement that "you leave us no choice but to advise your creditor that you have ignored our efforts, and that legal action may be necessary in order to collect this bil (sic)" did not constitute a threat of litigation.).  That is, in order for a collection letter to threaten legal action under § 1692e and its subsections, "it must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action <u>is either imminent</u> or <u>has already been made</u>." *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998) (emphasis added).  By using the qualifier that St. Mary's "may begin" certain ECAs, Medicredit did not, as a matter of law, threaten any action at all.  *Knowles v. Credit Bureau of Rochester*, U.S. Dist. LEXIS 8349

10

at *1 (W.D. N.Y. May 28, 1992) (finding that "failure to pay will leave our client no choice but to consider legal action," "threatens no action whatsoever").

Even if the Court were to find that the Second Letter did threaten ECAs, Medicredit had every reason to believe that St. Mary's would in fact undertake the identified ECAs. In the Second Letter, Medicredit advised Plaintiff that St. Mary's <u>may</u> undertake the following ECAs: Reporting to a consumer credit reporting agency or credit bureaus; commence a civil action (suit) which may include garnishment of wages, attaching or seizing a bank account, and placing a lien on residences or other personal property. SOF, at ¶40. Prior to sending the letter, Medicredit obtained information directly from SSM, of which St. Mary's is a facility, stating that it intended to undertake these ECAs in the event of consumer non-payment. SOF, at ¶19 & 20. Importantly, the information from SSM indicated that there were certain ECAs that it did not intend to take. SOF, at ¶19 & 20 (showing that SSM had no intention to undertake a foreclosure action, cause an individual's arrest, issue a writ of body attachment, sell the debt to another party, or defer or deny further case). The intent to utilize these ECAs was confirmed by SSM's Collections Policy located on its website and which applies to St. Mary's. SOF, at ¶21-27. SSM reports on its website, which can be accessed by all patients, that it will undertake the ECAs listed in the Second Letter if a consumer does not pay his or her debt within 30 days from the placement of "bad debt" with a debt collector. *Id.*

All of the information that Medicredit received from SSM, on behalf of St. Mary's, expressly stated that St. Mary's may institute the ECAs listed in the Second Letter under certain circumstances. Therefore, Plaintiff cannot meet her burden to establish that Medicredit threatened any action <u>it did not believe</u> that St. Mary's would take. Medicredit's express belief, as confirmed

11

by the documents received from SSM, clearly indicated that it may in fact undertake every ECA listed in the Second Letter.

For these reasons, Plaintiff cannot meet her burden to prove a violation of the FDCPA and judgment should enter in Medicredit's favor.

**2. Even if Medicredit is found to have committed a technical violation, it has no liability based on the application of the bona fide error defense.**

For the reasons stated above, Medicredit did not violate the FDCPA based on the Second Letter. However, even if it had, Medicredit is not liable to Plaintiff because of the protections afforded by the bona fide error defense. As stated above, to qualify for the bona fide error defense, Medicredit "must make three showings under § 1692k(c): (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." *Kort*, 394 F.3d at 537. Medicredit can satisfy each of these elements.

Any violation of the FDCPA that Medicredit may have committed was unintentional. The information Medicredit received from SSM, on behalf of St. Mary's, expressly advised Medicredit that St. Mary's may choose to undertake certain ECAs in the event of non-payment by the consumer. SOF, at ¶19-20. SSM advised Medicredit as follows with respect to potential ECAs:

12



SOF, at ¶20.  SSM also directed Medicredit to the online "Billing and Collection Policy".  *Id.*  The on-line billing and collection policy in effect at the time the Second Letter was sent confirmed these ECAs.  SOF, at ¶21-27. Based on these express representations from the facility, it is clear that Medicredit did not intentionally violate the FDCPA.  *Nielsen*, 307 F.3d at 641; *Kort*, 394 F.3d at 537.

For similar reasons, any error that Medicredit committed was the result of a bona fide error. Medicredit relied on the information it obtained from SSM and only listed the potential ECAs that were provided by SSM.  Medicredit was entitled to rely on the information provided by St. Mary's as evidence of its bona fide error. *Abdollahzadeh*, 922 F.3d at 816.  Medicredit was not required to independently investigate St. Mary's intentions.  *Smith*, 953 F.2d at 1032; *Randolph*, 368 F.3d at 729.  Under Plaintiff's theory, every time it received information from a facility that the facility intended to take further collection efforts, Medicredit would have to "fact-check" that representation and search for evidence to support what the facility represented.  The Seventh Circuit has expressly rejected that notion.  *Randolph*, 368 F.3d at 729.  In addition, just because a facility may not have undertaken legal action in the past does not mean that it will not in the future.

13

Medicredit is entitled to rely on the information from St. Mary's and is under no obligation to independently verify its veracity.

Medicredit maintains express, detailed, written policies regarding how and under what circumstances it references the potential for ECAs when collecting debt on behalf of tax-exempt hospitals. Medicredit (through Parallon) and St. Mary's (through SSM) are parties to a Master Service Agreement that dictates the terms on which Medicredit collects debt for St. Mary's. SOF, at ¶7-8. The MSA states that Medicredit is entitled to rely on the information provided to it purposes of collecting debt. SOF, at ¶8. When debt is placed with Medicredit, fee title is not transferred. SOF, at ¶9. Therefore, Medicredit would lack standing to sue on any debt. SOF, at ¶13.

Medicredit has a specific policy to ensure compliance with 501(r). SOF, at ¶15. That policy's stated purpose is to ensure compliance with client requests for collection efforts when the client is subject to 501(r). SOF, at ¶16. The policy states that Medicredit will only reference and/or perform ECAs that are requested by the client. SOF, at ¶18. Because St. Mary's is subject to 501(r), Medicredit required information in response to a Questionnaire so that Medicredit would have guidance with respect to St. Mary's intent. SOF, at ¶19. St. Mary's, through SSM, represented to Medicredit that it intended to undertake each and every ECA that was listed in the Second Letter. SOF, at ¶20.

To the extent that the Court finds that Medicredit violated the FDCPA because it had some reason to question St. Mary's stated intention with respect to the ECAs, Medicredit has various policies in place to ensure that it is only referencing ECAs that it believes St. Mary's would take. For all of these reasons, any violation by Medicredit was a bona fide error and, therefore, it is not liable to Plaintiff for her claims.

### 3. Plaintiff lacks standing to bring her claims.

Plaintiff's class action Complaint seeks the following relief:

> WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:
> 
> i.   Statutory damages;
> ii.  Attorney's fees, litigation expenses and costs of suit;
> iii. Such other and further relief as the Court deems proper.

Complaint, at p. 7. Plaintiff does not plead actual damage and pleads no facts to support any injury in fact. Because Plaintiff has not plead a single fact to support a claim for actual damages, she lacks standing to bring this case. Plaintiff has "alleged nothing more than a bare procedural violation of the Fair Debt Collection Practices Act. That is insufficient for purposes of Article III." *Casillas*, 926 F.3d at 339 (citing *Spokeo*, 136 S.Ct. at 1549).

It is not surprising that Plaintiff failed to plead an entitlement to actual damages under these circumstances. Plaintiff's sole claim is that Medicredit violated the FDCPA because it told her that St. Mary's "may" undertake certain ECAs that Medicredit did not believe St. Mary's would take. Had Plaintiff pled actual damages, such a claim would defeat the commonality of her class claim because actual damages would vary from class member to class member.

Even if Plaintiff pled a legitimate violation, Plaintiff was not injured by this representation in the single collection letter. In fact, Plaintiff took no action in response to receiving the Second Letter, except to file her class action Complaint. She has plead no actual damages and will be unable to prove any actual damages sustained on behalf of herself or the rest of her class.[3] Even

---

[3] *See Flecha v. Medicredit, et al.*, No. 18-50551, at p. 9 (5th Cir., January 8, 2020)(finding that the class lacked Article III standing in a letter case because "the putative class inevitably

SL 3719489.1
SL 3751610.1

if this Court were to find that Plaintiff "caught [Medicredit] in a mistake,[] it was not one that hurt her." *Id.* For these reasons Plaintiff lacks Article III standing to bring her claims and they should be dismissed.

## CONCLUSION

Plaintiff attempts to bring claims on behalf of herself and a putative class for violations of the FDCPA arising out of a single collection letter. Plaintiff's claims fail as a matter of law. Plaintiff cannot establish the key element of her claims, which is to prove that Medicredit believed that St. Mary's would not undertake any of the ECAs listed in the Second Letter. The evidence cited in this brief proves otherwise as a matter of law. Moreover, even if the Court were to find a technical violation, any violation was unintentional, bona fide, and made despite the maintenance of reasonable procedures to avoid the error. The Court should therefore enter judgment in Medicredit's favor with respect to Plaintiff's claims. In addition, even if the Court finds that summary judgment is not proper, Plaintiff lacks Article III standing to bring her claims and they should be dismissed.

WHEREFORE, Medicredit respectfully requests that the Court enter judgment in its favor on Plaintiff Helen Kwasniewski's claims, or in the alternative dismiss Plaintiff's claims, and for such other and further relief as is just.

---

includes people who received the letter but ignored it as junk mail or otherwise gave it no meaningful attention – and therefore lack a cognizable injury under Article III.")

Respectfully submitted this 18th day of February, 2020.

                                            *s/ Jamie N. Cotter*
                                            Jamie N. Cotter
                                            Spencer Fane LLP
                                            1700 Lincoln Street, Suite 2000
                                            Denver, CO 80203
                                            Phone: (303) 839-3826
                                            Fax: (303) 839-3838
                                            jcotter@spencerfane.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above pleading was served via the Court's CM/ECF system on Plaintiff's counsel, this 18th day of February, 2020:

*s/ Jamie N. Cotter*
