IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HELEN KWASNIEWSKI,
on behalf of plaintiff and a class,

       Plaintiff,       OPINION AND ORDER

v.

                    19-cv-701-wmc

MEDICREDIT, INC.

       Defendant.

Named plaintiff Helen Kwasniewski brings this putative class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against defendant Medicredit, Inc., for sending allegedly misleading collection letters. Specifically, the letter to Kwasniewski represented that a civil action "may" be commenced if her debt remained unpaid, despite the creditor allegedly having no intention to file suit. Before the court is plaintiff's motion to certify a Rule 23 class, which the court will grant for the reasons discussed below.

BACKGROUND

In March of 2019, defendant Medicredit sent a letter to Kwasniewski in an attempt to collect on a debt owed to St. Mary's Hospital - Janesville ("St. Mary's"), which is owned by SSM Health ("SSM"). The letter stated that Kwasniewski had a balance due of $224.66 and stated in relevant part:

> If this debt remains unpaid, then 30 days from the date of this letter the Facility may begin the following Extraordinary Collection Actions (ECAs):
> > Reporting to a consumer credit reporting agency or credit bureaus (Credit Agencies)

> Commence a civil action (suit) which may include:
> > Garnishment of wages
> > Attaching or seizing a bank account
> > Placing a lien on residences or other personal property

(Pl.'s Br., Appendix F (dkt. #43-6) 2.) This quoted language in the correspondence to Kwasniewski tracked a form letter that Medicredit apparently sent to some 108 individuals with Wisconsin addresses on behalf of St. Mary's during the period beginning August 18, 2018 (one year before the filing of this lawsuit) and ending September 16, 2019. (Pl.'s Br., Appendix G (dkt. #43-7) 3-4.)

Contrary to Medicredit's form letter, SSM apparently maintains policies and procedures that establish guidelines for determining when to undertake an "extraordinary collection action," including actually filing a lawsuit, against a consumer. In particular, the guidelines provide that SMM will not file suit if the consumer's debt balance is below $1200, although multiple debtor accounts may be combined to achieve the $1200 minimum balance. Accordingly, plaintiff claims Medicredit's form language violates 15 U.S.C. §§ 1692e, 1692e(2), 1692e(4), 1692e(5), and 1692e(10) by threatening a civil suit that the underlying creditor had no intention to undertake.

## OPINION

To certify a class under Federal Rule of Civil Procedure 23(b)(3), plaintiffs must satisfy a two-step analysis. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). First, the proposed class must satisfy four, threshold requirements under Rule 23(a): numerosity, commonality, typicality and adequacy. *Id.* Second, the proposed class must satisfy two requirements under Rule 23(b)(3): predominance and superiority.

*Id.* A court must engage in a "rigorous analysis" to determine that the requirements of Rule 23 have been satisfied. *CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

In her complaint and her original motion, plaintiff sought to certify a class of:

> (a) all individuals (b) to whom Medicredit sent a letter in the form attached to Plaintiff's complaint as Exhibit A (c) to a Wisconsin address (d) seeking to collect a debt for St. Mary's Hospital in the amount of $1000.00 or less, (e) which letter was sent at any time during a period beginning August 28, 2018 (one year prior to the filing of this action) and ending September 18, 2019 (21 days after the filing of this action).

(Dkt. #42.) In her reply brief, plaintiff sought to strike the reference to the $1000 dollar limit. (Pl.'s Reply (dkt. #51.) Defendant objects to this attempt to modify her class definition, arguing that the "crux" of plaintiff's claim was that St. Mary's does not intend to sue on "small debts," and that plaintiff's proposed omission of a dollar amount fundamentally alters her case and should not be permitted. (Def.'s Sur-Reply (dkt. #52-1) 2-3.)[1]

Consistent with principles of fairness, Rule 23 allows for amendments to a class certification order at any time before judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

---

[1] Defendant filed a motion for leave to file a sur-reply brief, in which it sought to address plaintiff's proposed amendment to her class definition. (*See* dkt. #52.) Having considered defendant's sur-reply, the court will obviously grant defendant's motion for leave to file.

3

In particular, courts have permitted adjustments to a class definition on a motion for class certification where a defendant is "not prejudiced by the timing of the change . . . and has had ample time to respond to the modified proposed class." *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-CV-7995, 2013 WL 66181, at *3 (N.D. Ill. Jan. 4, 2013). At this point, plaintiff proposed an alteration in her reply brief, although defendant was given an opportunity to respond by sur-reply. More fundamentally, the proposed change appears to alter plaintiff's essential claim as expressed in her complaint and opposition to defendant's motion for summary judgment -- that SSM does not pursue lawsuits on debts under a certain dollar amount. Plaintiff will therefore not be permitted to strike the dollar amount from the class certification.

Alternatively, plaintiff suggests that the dollar amount be adjusted from $1000 to $1200, to conform to evidence that SSM will not file a collection lawsuit on debts with an aggregate value of less than $1200. (*See id.*; Def.'s Mot. For Leave to File Sur-Reply (dkt. #52) ¶ 3.) Indeed, in her complaint, plaintiff expressly stated that she "may adjust this amount subsequent to discovery" (*see* Compl. (dkt. #1) ¶ 36 n.1), and she has largely altered her arguments in subsequent filings to reference this $1200 figure, (*see* Pl.'s Reply (dkt. #51) 5; Pl.'s Opp'n to Summ. J. (dkt. #35) 18). Unlike plaintiff's request to strike the dollar amount altogether, this adjustment does not fundamentally alter the nature and scope of plaintiff's claims. Moreover, defendant noted this adjustment but did not argue that plaintiff should not be permitted to make it, focusing instead on whether plaintiff should be allowed to strike the dollar amount altogether. (*See* Def.'s Opp'n (dkt. #49) 3-4; Def.'s Mot. For Leave to File Sur-Reply (dkt. #52) ¶ 3.)

Accordingly, in light of evidence of SSM's formal cap, the fact that defendant has been on notice of the change in the specific dollar amount, and defendant's apparent lack of specific objection to the change, the court will adopt plaintiff's requested modification, adjusting the dollar amount from "$1000 or less" to "less than $1200" in her class definition and will consider plaintiff's class certification under this amended definition.[2]

## I. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The Seventh Circuit has indicated that a group as small as forty may satisfy the numerosity requirement." *Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537, at *2 (E.D. Wis. Mar. 29, 2011) (citing cases).

Here, plaintiff asserts that there are at least 108 class members. If this proves correct, it would appear to satisfy the numerosity requirement. Defendant, however, contends that plaintiff's assertion is "demonstrably false." (Def.'s Opp'n (dkt. #49) 6.) In particular, defendant points out while that the evidence relied upon by plaintiff shows that Medicredit sent 108 of the relevant form letters to a Wisconsin address during the statutory period, the evidence does *not* show that the letters were seeking to collect on a debt less than a particular dollar amount. Because plaintiff's proposed class only includes individuals who received letters seeking to collect on a debt of less than $1200, defendant argues that plaintiff has not met her burden of showing numerosity.

---

[2] Plaintiff will also be granted leave to file an amended complaint to reflect this change. *See Savanna Grp., Inc.*, 2013 WL 66181, at *3 (considering motion to certify Rule 23 class under new proposed class definition and permitting plaintiff to amend its complaint to reflect the new definition).

5

The court agrees that if defendant's interpretation of the evidence is correct, then the 108 number may well include individuals outside of the proposed class. Recognizing this, plaintiff suggests in her reply brief that it is still reasonable to infer that a "significant portion" of the letters were to collect on a debt under $1200, thus still satisfying the numerosity requirement. Plaintiff further represents that she has requested discovery from defendant seeking production of the files of the 108 individuals who received letters, but that defendant has refused to comply.³

While a plaintiff "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity," he is "not required to specify the exact number of persons in the class." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (citations omitted). And courts have permitted a plaintiff to extrapolate from available evidence to estimate the size of a class. *See Perdue v. Individual Members of Indiana State Bd. of Law Examiners*, 266 F.R.D. 215, 218 (S.D. Ind. 2010); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976) ("In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings."). That plaintiff has specifically requested, and defendant has refused, discovery seeking to identify the specific individuals in this group who would fall under the class definition favors of certification. *See Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980) ("The defendants argue . . . that class certification must be denied since the plaintiff is unable to state the exact number of persons affected. This is pure sophistry. The exact number of affected persons is known to the defendants who have the means to identify

---

³ If this remains true, then plaintiff's obvious solution is to move to compel discovery.

them at will."). Of course, if future discovery reveals that the actual number of class members is in fact substantially lower than plaintiff's estimation, the court may revisit the class certification on an appropriate motion. *See Perdue*, 266 F.R.D. at 218.

## II. Commonality

The commonality requirement is met when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single, common issue will satisfy this requirement if the issue is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. As here, this requirement may be satisfied by a "common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Id.*

In this case, plaintiff has identified a single, common nucleus of fact based on defendant's standardized conduct: Medicredit sent a standardized collection letter to proposed class members that misleadingly threatened a lawsuit the creditor did not intend to pursue. Plaintiff also bases her claim that there was no intention to sue on facts common to all class members, including that SSM/St. Mary's had a policy of not bringing suits against individuals with less than $1200 of debt.

Nevertheless, defendant argues that there is a lack of commonality because plaintiff's theory is that "only individuals who do not satisfy SSM's criteria for suit would

7

possess a claim against Medicredit." (Def.'s Opp'n (dkt. #49) 9.) According to defendant, whether or not an individual meets SSM's criteria for suit is an "individual inquiry." (*Id.*) However, defendant itself acknowledges that all individuals with a debt less than $1200 would meet SSM's criteria for suit (*id.*), and the proposed, amended class includes only those individuals with less than $1200 in debt, thus negating any need for individualized inquiries, as by definition none of the class members meet SSM's criteria for suit.[4] Thus, the commonality requirement is satisfied.

### III. Typicality

Typicality requires that "the named representatives' claims [must] have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Here, the named plaintiff and putative class representative received the same form letter as the other proposed class members in material respects and like the other class members, she did not meet SSM's criteria for suit because her debt was less than $1200. This makes her claims typical of the claims of the class at large. *See Keele*, 149 F.3d at 595 ("By mailing the form letters seeking the $12.50 collection fee, the Wexlers engaged in the same course of conduct towards Keele and the members of classes A and B. . . . We are confident that Keele has met Rule 23's typicality requirement.").

---

[4] Even if plaintiff had not been permitted to amend her proposed class, this argument would be the same. If the class contained only those individuals sent letters for $1000 or less in debt (as was originally proposed), still none of them would meet SSM's criteria for suit. Thus, defendant is not prejudiced by the amendment.

**IV. Adequacy**

The final Rule 23(a) requirement is that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In considering the adequacy requirement, courts consider whether (1) the chosen representative has "antagonistic or conflicting claims with other members of the class," (2) the chosen representative has "a sufficient interest in the outcome to ensure vigorous advocacy," and (3) counsel for the named plaintiff is "competent, experienced, qualified, and generally able to conduct the litigation vigorously." *See Wanty v. Messerli & Kramer, P.A.*, No. 05-CV-0350, 2006 WL 2691076, at *1 (E.D. Wis. Sept. 19, 2006) (citing cases).

Here, the putative class representative seeks money damages as the result of defendant's allegedly unlawful collection practices. This is the same interest held by the other, putative class members, which is sufficient to ensure vigorous advocacy. Further, the counsel chosen by Kwasniewski appears to be competent and experienced. (*See* Edelman Decl., Ex. J (dkt. #43-10); Miller Decl., Ex. K (dkt. #43-11); Usman Decl., Ex. L (dkt. #43-12).)

Defendant raises three arguments in opposition. First, it argues that plaintiff's claims are particular to her because her violation hinges on the fact that she was sent a collection letter for less than $1200 in debt, but every other class member "will have to establish, by record evidence, the way in which they do not satisfy SSM's criteria for legal suit." (Def.'s Opp'n (dkt. #49) 11.) As noted already, however, the class is defined as members sent letters seeking to collect on a debt of less than $1200, and defendant admits that individuals with a debt less than $1200 do not meet SSM's criteria for suit.

Second, defendant represents that Kwasniewski filed for bankruptcy three months after receiving the collection letter, preventing SSM from filing suit against her in particular due to the operation of the automatic stay. According to defendant, the existence of this "defense" makes her claim unique from that of other class members. Certainly, "[w]here there is indication that the representative may be particularly interested in a claim or defense unique to him or a subclass, the court is justified in denying class action certification on the grounds of inadequate representation." *Mudd v. Busse*, 68 F.R.D. 522, 529 (N.D. Ind. 1975). But as her bankruptcy was not filed until *after* she received the letter, it has no bearing on whether or not the letter was misleading at the time received. Further, plaintiff has not indicated any intention to rely on her later bankruptcy filing for any part of her theory or claim, so at most the filing might terminate the period of emotional distress caused by Medicredit's misleading letter. However, this alone is not enough to demonstrate that Kwasniewski's interests are materially different from that of the other class members nor that she has conflicting claims with other members of the class. *See Wanty v. Messerli & Kramer*, P.A., No. 05-CV-0350, 2006 WL 2691076, at *1 (E.D. Wis. Sept. 19, 2006) (holding that plaintiff's bankruptcy did not affect her FDCPA class claims and did not render her an inadequate class representative).

Third, defendant contends that because plaintiff's claims "lack merit," there exist "serious doubt[s] over her adequacy as a class representative." (Def.'s Opp'n (dkt. #49) 12.) Certainly, if a plaintiff's claim "is a *clear* loser at the time [s]he asks to be made class representative, then approving [her] as class representative can only hurt the class." *Robinson v. Sheriff of Cook Cty.*, 167 F.3d 1155, 1157 (7th Cir. 1999) (emphasis in original).

10

Still, a plaintiff is not "disqualified as class representative if he *may* fail to prove his case or if the defendant *may* have good defenses." *Id.* (emphasis in original). And a court "need not, should not, and does not decide on the merits" of a claim on a class certification motion. *Wiedenbeck v. Cinergy Health, Inc.*, No. 12-CV-508-WMC, 2013 WL 5308206, at *11 (W.D. Wis. Sept. 20, 2013). Here, there is no obvious legal or factual weakness to suggest that plaintiff's claim is a clear loser.

## V. Predominance

The "predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1777, p. 518-19 (2d ed. 1986)). Predominance is not satisfied if "individual questions . . . overwhelm questions common to the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).

Defendant's only argument here is to again contend that each class member will have to establish individually that they did not meet SSM's criteria for legal action. As previously addressed, the court simply disagrees that such an individual inquiry will be necessary. Rather, there is a single predominant issue here: whether the letters sent to all class members were misleading under the FDCPA. *See Vines v. Sands*, 188 F.R.D. 302, 304 (N.D. Ill. 1999) (certifying Rule 23 class for action alleging misleading debt collection letters, finding that "[t]he predominate legal issue is whether the letters violate the FDCPA"). As noted above, plaintiff's theory rests on facts common to all class members. She has therefore demonstrated predominance.

11

**VI. Superiority**

Finally, as for the requirement of superiority, the case must again be one "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee note to the 1966 Amendment). Other courts have held in similar cases that a class action was a superior method of adjudicating FDCPA suits over allegedly unlawful collection letters. For example, in *Vines v. Sands*, 188 F.R.D. 302 (N.D. Ill. 1999), the court explained that "a class action is the superior method of adjudication," reasoning that "[m]any plaintiffs may not know their rights are being violated, and a common action is preferable to individual actions determining [the debt collector's] liability for mailing a standardized letter." *Id.* at 305. Similarly, in *Avila v. Van Ru Credit Corp.*, No. 94 C 3234, 1995 WL 41425 (N.D. Ill. Jan. 31, 1995), the court approved class certification in an FDCPA collection letter action, finding that the superiority requirement was met in part because a class action was a "more efficient use of judicial resources than forcing those consumers to each file individual actions for statutory damages." *Id.* at *7. Likewise, the court here concludes that a class action will promote judicial economy and uniformity of decisions, and thus concludes that the final element for class certification is met.

## VII. Next Steps

### A. Notice

For any class action certified under Rule 23(b)(3), the court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must clearly, concisely, and comprehensibly state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through an attorney should he or she desire; (5) that the court will exclude any class member requesting exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members, regardless of whether a member may have a stronger individual claim of liability not dependent on proof of an unofficial policy to deny overtime pay. *Id.*

Accordingly, the parties are directed to meet and confer on the appropriate class notice, and submit a proposed joint notice, if possible, on or before January 15, 2021. If the parties are unable to reach an agreement, plaintiffs should submit their proposed version by that same deadline, with defendant's written response and proposed, alternative version due by January 22, 2021.

### B. Related Case

It has also come to my attention that a related case was filed in this court on September 30, 2020, but mistakenly assigned to a different judge. *See Byrnes v. Medicredit, Inc.*, 20-cv-907. This case involves the same parties, who appear to advance similar claims

and defenses, although with some notable differences, including proposing a broader class across multiple states. Moreover, counsel for the parties appears to be the same. Given the substantial overlap, this case will be reassigned to me for ease of adjudication. Also, the court will hold a status conference via Zoom with the parties on January 8, 2021, at 2 p.m. to discuss scheduling for both cases and whether consolidation would be appropriate.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion for class certification (dkt. #42) is GRANTED.

   2) The court certifies the following class pursuant to Rule 23:

      (a) all individuals (b) to whom Medicredit sent a letter in the form attached to Plaintiff's complaint as Exhibit A (c) to a Wisconsin address (d) seeking to collect a debt for St. Mary's Hospital in the amount of less than $1200, (e) which letter was sent at any time during a period beginning August 28, 2018 (one year prior to the filing of this action) and ending September 18, 2019 (21 days after the filing of this action).

   3) The court appoints Helen Kwasniewski Eric as the class representative.

   4) The court appoints Attorneys Daniel Edelman, Heidi Miller, and Zeshan Usman and the firms Edelman, Combs, Latturner & Goodwin, LLC, HNM Law, LLC, Usman Law Firm, LLC, as class counsel.

5) On or before January 15, 2021, the parties should submit a joint proposed form and method of notice, or if unable to agree, plaintiff should submit her own proposed notice, with defendant to respond by January 22, 2021.

6) The court will hold a status conference on January 8, 2021, at 2 p.m. The court will send invitations to a Zoom video hearing by email to counsel. All participants are reminded that video or audio recordings of the proceedings are strictly prohibited. Full guidelines governing access to court hearings can be found here. A guide to participating in Zoom video hearings can be found here. Public access to the video stream is available on YouTube.

7) Defendant's motion to file a sur-reply (dkt. #52) is GRANTED.

8) Consistent with the court's November 17, 2020, text order (dkt. #62), summary judgment motions are now due January 18, 2021.

Entered this 21st day of December, 2020.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge